**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana Woodmass, | No. 12-CV-1367-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff Diana Woodmass, which challenges the Social Security Administration's decision to deny benefits. (Doc. 1.) For the reasons set forth below, the Court affirms the Social Security Administration's decision.

## BACKGROUND

On January 3, 2009, Woodmass applied for disability insurance benefits, alleging a disability onset date of October 5, 2007. (R. at 18.) Woodmass's date last insured ("DLI") for disability insurance benefits, and thus the date on or before which she must have been disabled, was December 31, 2012. (*Id.*) Woodmass's claim was denied. (*Id.* at 68–71.) Woodmass then appealed to an Administrative Law Judge ("ALJ"). (*Id.* at 87–88.) The ALJ conducted a hearing on the matter on April 21, 2008. (*Id.* at 37–63.)

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.

In evaluating whether Woodmass was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (*Id.* at 25–35.) At step one, the ALJ determined that Woodmass had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 20.) At step two, the ALJ determined that Woodmass suffered from severe impairments including having suffered a heart attack and a four-vessel coronary artery bypass grafting, and being status-post catheterization and stenting. (*Id.*) Woodmass also suffered from diabetes mellitus type II, coronary artery disease, hypertension, gastroesophageal reflux disease ("GERD"), morbid obesity, degenerative disc disease of the lumbar spine, depression, and an anxiety disorder. (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.* at 21.)

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income).  Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations.  If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past.  Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.  This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

At that point, the ALJ made a determination of Woodmass's residual functional capacity ("RFC"),[3] concluding that Woodmass could perform sedentary work with restrictions. (*Id.* at 23.) The ALJ thus determined at step four that Woodmass retained the RFC to perform her past relevant work as a receptionist. (*Id.* at 27.) The ALJ therefore did not reach step five. Given this analysis, the ALJ concluded that Woodmass was not disabled.  (*Id.* at 28.)

On April 27, 2012, the Appeals Council denied Woodmass's request for review (*id.* at 1–6) making the ALJ's decision final for purposes of review. *See* 20 C.F.R. § 422.210(a). Woodmass filed the complaint underlying this action on June 26, 2012, seeking this Court's review of the ALJ's denial of benefits.[4] (Doc. 1.) The matter is now fully briefed before this Court.  (Docs. 13, 14, 18.)

## DISCUSSION

## I.  Standard of Review

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining

---

[3] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* SSR 96-8p (July 2, 1996).

[4] Woodmass was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Court "may not reweigh the evidence, substitute our own judgment for the Secretary's, or give vent to feelings of compassion." *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir. 1987) (internal citation omitted).

## II.     Analysis

Woodmass argues that the ALJ erred by: (1) failing to articulate sufficient reasons for rejecting her subjective complaints and lay witness evidence as to her symptoms (Doc. 13 at 11–16) and (2) failing to properly weigh medical source opinion evidence (*id.* at 16–23).

### A.     Woodmass's Subjective Complaints

Woodmass contends that the ALJ did not provide sufficient reasons for rejecting her complaints regarding the pain and fatigue that impair her ability to work. The ALJ must engage in a two-step analysis in determining whether a claimant's testimony regarding her subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If she has, and the ALJ has found no evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the

reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan,* 947 F.2d 341 (9th Cir. 1991). The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain. *Bunnell*, 947 F.2d at 345–46 (internal quotation marks and citation omitted).

Here, at the first step, the ALJ found that Woodmass's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 24.) However, at the second step, the ALJ found that although Woodmass's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms" that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" of having the ability to perform semi-skilled sedentary work with restrictions. (*Id.* at 23–24.)

During her hearing, Woodmass testified that she has symptoms as a result of her impairments that prevent her from sustaining full-time employment. She complained of stabbing sensations and chest pains when she moves, bends down, or reaches for something, dizziness and tingling in her extremities from diabetes, shortness of breath from walking, swelling from the side effects of prescribed medication, headaches when she attempts to concentrate, and blurry vision. (R. at 49–60.) She further testified to limitations including the inability to stand for longer than ten minutes, the need to elevate her feet above the heart for one to two hours at a time when sitting.

In reaching a conclusion as to whether a claimant is disabled, the ALJ is to evaluate the claimant's statements in relation to the objective medical evidence and other

evidence. 20 C.F.R. § 404.1529. After concluding that Woodmass's statements were inconsistent with the RFC determination, the ALJ discussed in detail why the symptoms and limitations to which Woodmass testified were either less credible because they were controverted by objective medical evidence or not disabling. The ALJ noted that diagnostic exams showed her impairments were stable and under control due to medication. (*Id.* at 24–25.) Her respiration and heart rate were found to be normal in several exams, a 2008 cardiac catheterization was negative for any severe obstructive disease in the bypass grafts, and Woodmass was recommended to maintain a strict diet and to stay physically active. (*Id.*) In 2008, she was diagnosed with chest pain but it was ascribed to a non-cardiac etiology and assessed as stable with pain medication. (*Id.* at 25.) In regards to chronic kidney disease, Woodmass no longer had dysuria, hematuria, or urinary symptoms as of August 2009. (*Id.*) It was also noted throughout these exams that Woodmass's extremities were without clubbing, cyanosis, or edema. (*Id.*) The ALJ also referred to opinion evidence that indicated greater strength and mobility than reported by Woodmass at the hearing. (*Id.* at 26.)

The medical evidence reviewed by the ALJ exposes inconsistencies with Woodmass's subjective complaints of pain and contradicts the physical limitations reported by Woodmass. The ALJ credited Woodmass's testimony regarding symptoms to the extent the symptoms were related to her impairments but noted portions of the medical evidence that show that her condition was better than reported and manageable. Thus, the ALJ provided "specific, clear and convincing reasons" and did not err in discounting Woodmass's complaints. *See Bunnell*, 947 F.2d at 345–46.

### B. Lay Witness Evidence

Woodmass argues that the ALJ did not give germane reasons for rejecting the testimony of her sister, Donna Arico. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout*

*v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1513(d)(4) (can use evidence from other sources to "show the severity of [the] impairment"). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).

Arico completed a "Function Report" in which she described her observations of Woodmass inside and outside of the home, including her daily routine, personal care, transportation, shopping, financial management, and other activities. (R. at 171–78). She commented that Woodmass medicates herself as needed, is fairly inactive throughout the day, and does some light housework. (*Id.* at 171.) She further observed that any activity makes Woodmass "winded" and causes pain, which in turn makes it difficult for her to concentrate or complete tasks as she is "progressively getting sicker with the diabetes and loss of blood movement — due to clogged arteries." (*Id.* at 176, 178.) The ALJ stated that Arico's opinion "is given some weight since it shows the claimant is not as limited as alleged." (*Id.* at 27.) The ALJ was not required to give germane reasons for *accepting* the opinion, even if in doing so, he reached an adverse disability determination. Further, Arico's observations do not add anything more to the record than what the medical evidence or Woodmass's complaints already show. *See Molina*, 674 F.3d at 1117–22 (failure to discuss testimony of family members while rejecting claimant's own testimony was harmless when testimony "did not describe any limitations beyond those [the claimant] herself described"). Thus, the ALJ's failure to specify what aspects of Arico's opinion contradict Woodmass's testimony was harmless.

### C.    Medical Opinion Evidence

#### 1.    Dr. Larry Kline

"The medical opinion of a claimant's treating physician is entitled to special weight." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (internal quotation

marks and citation omitted). This is because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995). If, as here, another doctor counters the treating physician's opinion, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (internal quotation marks and citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632 (citing SSR 96-2p[5] at 4, 61 Fed. Reg. at 34,491.  However, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Woodmass contends that the ALJ failed to provide specific and legitimate reasons for rejecting one of the opinions of her treating cardiologist, Dr. Larry Kline. The ALJ stated that "[t]he opinion of Dr. Kline in the treatment record is given significant weight since it is supported by clinical signs, diagnostic examinations and other evidence that was obtained in the course of providing treatment to the claimant." (R. at 27.) However, he gave "little weight" to Dr. Kline's Medical Assessment of Ability to Do Work-Related Physical Activities ("Assessment") completed on November 9, 2009 because it is

---

[5] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). They "'reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (alteration in original) (quoting *Avenetti v. Barnhart,* 456 F.3d 1122, 1124 (9th Cir. 2006)).

"unsupported by clinical signs, diagnostic examinations and other objective evidence in the record and is contrary to his treatment record of the claimant." (*Id.*)

The checklist-style Assessment contains Dr. Kline's conclusion that Woodmass cannot perform work eight hours a day, five days a week on a regular and consistent basis. (*Id.* at 492.) He opined that Woodmass can sit for three hours and stand or walk for less than two hours in an eight-hour workday, and could not lift more than ten pounds. (*Id.*) Dr. Kline listed minimal movement, exertion, twisting, and bending due to "disabling chest pain" as further limitations on her ability to sustain work activity. (*Id.* at 493.)

The ALJ gave less weight to the Assessment because of inconsistencies with Dr. Kline's treatment records. The ALJ noted that "Dr. Kline indicated in his treatment record that [Woodmass's] persistent chest pain was suspected to be of musculoskeletal origin and recommended diet and regular exercise. In contrast, he claimed in his [Assessment] that [Woodmass] had disabling chest pain and renal insufficiency." (*Id.* at 27.) Dr. Kline diagnosed the chest pain to have a non-cardiac, possibly musculoskeletal origin (see, e.g., id. at 232, 308, 369, 371) but the Assessment does not refer to the origin of the pain. To the extent the inconsistency arose from the statement that Woodmass could improve her condition with exercise, Dr. Kline states in the Assessment that Woodmass "should be able to exercise but has not seemed to recover" since her heart surgery in October 2007 and that she has "exercise intolerance." (*Id.* at 493.) The meaning of the phrase "exercise intolerance" is unclear and to the extent that Dr. Kline previously opined that Woodmass's pain could be reduced with exercise and that her symptoms were improving, Dr. Kline's records are indeed inconsistent. Thus, the ALJ's conclusion that the Assessment was inconsistent with treatment records was not erroneous.

The ALJ also noted that although there was a reference to "renal insufficiency" in the Assessment, Dr. Kline "treated [Woodmass] for her heart condition and not her kidney problem and his opinion with regard to the renal problem is unsupported by his treatment record and appears to be speculative." (*Id*. at 27.) Dr. Kline did not opine on Woodmass's kidney disease or use it as a basis to proffer work limitations. In response to a form question asking whether Woodmass suffered side effects from medication, Dr. Kline stated that she had stopped using prescription Motrin because of "renal insufficiency." (*Id.* at 493.) The treatment records reflect that Woodmass was using Motrin to control her chest pain but was no longer able to tolerate it. (*Id.* at 486.) Dr. Kline prescribed Percocet in the place of Motrin after he conferred with her nephrologist, Dr. Steven Ting. (*Id.*) The ALJ may have misinterpreted the comments in the Assessment but this was not a reason to discount it.

Another reason cited by the ALJ in discounting the Assessment was that it is unsupported by clinical signs, diagnostic examinations and other objective evidence in the record. (*Id.* at 27.) The chief impairment upon which Dr. Kline based his proffered work limitations was chest pain. (*See id.* at 492–93.) When reviewing the medical evidence, the ALJ noted that several clinical examinations by Dr. Kline and other treating physicians showed that Woodmass's chest pain was steadily improving and under control with medication. In August 2008, Dr. Fernando DeCastro, a cardiologist, examined Woodmass and noted that her blood pressure and pulse were regular, her respiration was normal and not labored, and that her lungs were clear. (*Id.* at 255.) She had experienced severe chest pain before the examination but Dr. DeCastro prescribed medication, a strict diet, and exercise to keep her pain under control. (*Id.*)

In September 2009, two months before the Assessment, Dr. Kline reported after an examination that Woodmass's chest pains had returned but were less severe and for the most part were controlled or suppressed by taking medication. (*Id.* at 486.) Her blood

pressure, heart rate, lungs, and respiration were normal and unlabored. (*Id.*) On October 29, 2009, a few days before the Assessment, Dr. DeCastro examined Woodmass and noted that her chest pain was stable and that current pain management would be continued. (*Id.* at 500.) His only recommendations were that Woodmass should not operate a motor vehicle or heavy machinery while on the medication. (*Id.*) Further, Dr. DeCastro reported that Woodmass was taking medication regularly without problems. Her breathing was unlabored and heart rate was normal. (*Id.* at 499.) Notably, Dr. Kline checked the "no" box in response to the question on the Assessment of whether the proffered limitations can "reasonably be expected to result from objective clinical or diagnostic findings which have been documented either by you, or elsewhere in Claimant's medical record." (*Id.* at 493.) There was substantial evidence for the ALJ to conclude that the Assessment was unsupported by the medical evidence in the record. The ALJ did not err by according "little weight" to the Assessment and is not a ground to vacate his determination.

### 2.      Dr. Steven Ting

The ALJ gave "little weight" to the opinion of Woodmass's treating physician, Dr. Steven Ting. (*Id.* at 27.) In a Medical Assessment of Ability to do Work-Related Physical Activities completed on March 15, 2010, Dr. Ting opined that Woodmass was unable to perform work for eight hours a day, five days a week on a regular and consistent basis. (*Id.* at 526.) She could sit for only two hours and stand or walk for 2 hours in an eight-hour workday, and was unable to lift more than ten pounds. (*Id.*) He listed the following impairments on the Assessment: degenerative joint disease or arthritis, chronic pain, back pain, coronary heart disease, and shortness of breath. (*Id.* at 526–27.) Because Dr. Ting's opinion was contradicted by other medical sources, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to reject this opinion. *Orn*, 495 F.3d at 632.

1    The ALJ assigned minimal weight to Dr. Ting's opinion because it was: (1)

2    unsupported by objective evidence from his own treatment record and (2) appeared to be

3    speculative or based on Woodmass's subjective complaints. (R. at 27.)

4    In reference to Woodmass's kidney condition, the ALJ noted that it has greatly

5    improved through treatment and was not disabling. Dr. Ting had seen Woodmass during

6    three clinical visits for acute renal failure and chronic kidney disease on May 21, June 16,

7    and August 17 of 2009. (*Id.* at 332–34, 461–63, 467–69.) The ALJ noted that

8    Woodmass's kidney condition had originally been caused by heavy medication usage and

9    interactions with other drugs. (*Id.* at 27.) The ALJ further stated that the condition greatly

10   improved after Woodmass stopped taking non-steroidal anti-inflammatory medication

11   and began using a different drug to control her chest pain. (*Id.*; *see also id.* at 300, 462.)

12   After this new regimen, Dr. Ting found that Woodmass's renal failure was "resolved"

13   and that she had mild "hypertensive nephrosclerosis" or chronic kidney disease. (*Id.* at

14   333.) The fact that Woodmass's kidney condition improved is supported by substantial

15   evidence in the record. However, the Assessment did not list the condition as one of the

16   impairments causing the limitations on work. Thus the improvement in the kidney

17   condition was not a legitimate reason to discount Dr. Ting's opinion in the Assessment.

18   The ALJ further noted that although Dr. Ting referred to chronic pain and

19   shortness of breath in the Assessment, he did not treat Woodmass for those conditions

20   nor do his records show any limitations arising out of them. (*Id.* at 27.) The ALJ

21   concluded that the Assessment with regard to these conditions "appear[s to be]

22   speculative or is based on [Woodmass's] subjective complaints." (*Id.*) Dr. Ting treated

23   Woodmass for acute renal failure and chronic kidney disease but not for chronic pain or

24   shortness of breath. (*Id.* at 332–34, 461–63, 464–66.) During each of the three visits, Dr.

25   Ting reported that Woodmass was positive for "chronic pain syndrome" but did not

26

27

28

mention the severity of the condition or corresponding limitations. (*Id.*) Dr. Ting further noted during each visit that Woodmass "denies chest pain or shortness of breath." (*Id.*)

It appears that Dr. Ting's diagnosis of chronic pain and shortness of breath in the Assessment eight months after Woodmass's last clinical visit was based on subjective complaints. The ALJ had previously found those complaints to be less than credible. (*Id.* at 24); *see Bray*, 554 F.3d at 1228 (holding that it is reasonable to discount a physician's prescription based on subjective complaints only when the ALJ determines those complaints to be less than credible). Thus, the ALJ did not err in discounting the Assessment because it is unsupported by objective evidence in the treatment records. *See Batson,* 359 F.3d at 1195 (ALJ properly discounted treating physicians' opinions that were conclusory, brief, and unsupported by the record as a whole); *Thomas*, 278 F.3d at 957.

### 3. Dr. William Chaffee

Woodmass contends that although the ALJ did not reject the opinion of the consultative examiner, Dr. Stephen Chaffee, he failed to consider certain limitations proffered by Dr. Chaffee that would prevent Woodmass from working in her previous capacity as a receptionist. Following the examination on April 14, 2009, Dr. Chaffee noted that Woodmass's hand movement was strained and that she could never handle, finger, or feel in her current condition. (R. at 265.) He concluded that the limitations were due to "suspected peripheral neuropathy." (*Id.*) Woodmass refers to the DOL's description of a receptionist as including duties that require frequent reaching and handling, and occasional fingering.[6] U.S. Department of Labor, *Selected Characteristics*

---

[6] Woodmass may rely upon the DOL's description of the duties of a receptionist in this matter. "The Secretary routinely relies on these publications in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citing *Villa v. Heckler,* 797 F.2d 794, 798 (9th Cir. 1986)); *see also* 20 C.F.R. §§ 404.1566(d)(1)), 404.1568, 404.1569.

*of Occupations Defined in the Dictionary of Occupational Titles* 336 (1993). Therefore, she argues that she could not have performed that work based on Dr. Chaffee's diagnosis. Dr. Chaffee was an examining physician whose opinion was contradicted by other medical sources. The ALJ must provide specific and legitimate reasons supported by substantial evidence in the record to reject his opinion. *Lester*, 81 F.3d at 830–31 (internal citation omitted).

The ALJ gave weight to Dr. Chaffee's opinion "only to the extent that it is consistent with clinical signs and other evidence in the examination and the record as whole, which show the claimant does not have a disabling impairment or combination of impairments." (R at 27.) No other medical source recommended similar limitations to Woodmass's hand movement. Woodmass points to the fact that in their checklist-style Assessments, Dr. Ting recommended a limitation of "occasional" hand usage and Dr. Kline recommended "frequent" hand usage. (*Id.* at 492, 526.) However, Woodmass's examining and treating sources did not note difficulties with hand movement during any of her several clinical visits. (*See, e.g., id.* at 353, 446, 461, 492, 526.) Further, the state agency's reviewing physician, Dr. John Fahlberg, stated on the Physical Residual Functional Capacity Assessment that the limitations proffered by Dr. Chaffee "make[ ] no sense" and suspected an error in filling out the form. (*Id.* at 449.) He explained that Woodmass does not seem to have peripheral neuropathy and "certainly not limiting to that extent." (*Id.* at 449.) Thus, there was substantial evidence in the record to reject the hand movement limitations in Dr. Chaffee's Assessment.

### 4.    Dr. Marcel Van Eerd

Woodmass asserts that proffered limitations in the opinion of the examining psychologist, Dr. Marcel Van Eerd, would preclude her from working as a receptionist. Therefore, the ALJ erred in not finding her to be disabled. Woodmass points to Dr. Van Eerd's opinion that she has "good basic ability to remember simple work-like instructions

such as directions, locations and procedures" and that she "offered adequate effort with good basic skills in attending and concentrating to carry out short simple instructions." (*Id.* at 270.) She argues that because a receptionist requires a specific vocational preparation level of four, which is the highest level of semi-skilled work, the ability to do "simple work" would not let her perform in that capacity.

The ALJ gave substantial weight to Dr. Van Eerd's opinion "as it is supported by clinical signs and other evidence in the examination and other evidence that was obtained during [an] independent evaluation of [Woodmass]." (*Id.* at 27.) Dr. Van Eerd's notes from the April 2009 evaluation are consistent with the ALJ's finding that Woodmass is capable of performing her past work as a receptionist. The ALJ discussed Dr. Van Eerd's observations that Woodmass could relate current news events and do arithmetic, and that she had good abstract ability, fair vocabulary, and adequate social awareness and judgment. (*Id.* at 21–22.) Further, the fact that Woodmass could remember simple work-like instructions does not preclude the possibility that she could process more complex instructions. Indeed, the ALJ gave "significant weight" to the opinions of the state agency's reviewing psychologists, Dr. Brady Dalton and Dr. Nicole Lazorwitz, who opined that Woodmass could understand, remember, and carry out detailed instructions. (*Id.* at 286, 477); *see Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.") Woodmass essentially asks this Court to reweigh the evidence in regards to her mental capacity but will not do so. *See Winans*, 853 F.2d at 644–45. The ALJ did not err in considering the opinion of Dr. Van Eerd as it relates to Woodmass's understanding, memory, and concentration

/ / /

/ / /

- 15 -

### 5.      State Agency Reviewing Physicians

Woodmass argues that the ALJ should have rejected the opinions of the state agency's reviewing physicians, Dr. John Fahlberg and Dr. Erika Wavak. Woodmass provides the following reasons in support: (1) the physicians were non-treating and non-examining, (2) the ALJ assigned their opinions "significant weight" even though their RFC conclusions were allegedly inconsistent with that of the ALJ, and (3) the physicians failed to note which medical records they reviewed. The fact that the doctors were reviewing physicians did not require the ALJ to reject their opinions since their conclusions were consistent with other evidence in the record. *See Thomas*, 278 F.3d at 957. Further, as Woodmass appears to concede in her Reply, their RFC conclusions were consistent with that of the ALJ. The physicians opined that Woodmass had abilities exceeding the requirements of sedentary work, and that she could do light or medium work. (R. at 443–50, 478–85); *see* 20 C.F.R. §§ 404.1567(b) ("[i]f someone can do light work, we determine that he or she can also do sedentary work"), 404.1567(c) ("[i]f someone can do medium work, we determine that he or she can also do sedentary and light work"). The ALJ considered these opinions but accounting for other evidence in the record, he concluded that Woodmass would at least be able to do sedentary work. (R. at 23.) Finally, the physicians were directed to base their conclusions on all evidence in Woodmass's file. (*See id.* at 443, 478.) The fact that they did not specify what records they reviewed is not a legitimate reason to reject their evaluations. The ALJ did not err in considering the reviewing physicians' opinions.

### III.    Remedy

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

/ / /

- 16 -

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to terminate this case and enter judgment accordingly.

Dated this 24th day of June, 2013.

G. Murray Snow
United States District Judge